UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DIVISION

CASE NO. 24-cv-24380-WILLIAMS/GOODMAN

CHANEL, INC.,

       Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A",

       Defendants.

_____/

**REPORT AND RECOMMENDATIONS RE PLAINTIFF'S**
**MOTION FOR PRELIMINARY INJUNCTION**

       Chanel, Inc., ("Plaintiff" or "Chanel") filed a Motion for Entry of a Preliminary

Injunction against the Individuals, Business Entities, and Unincorporated Associations

identified on Schedule "A" (collectively "Defendants"). [ECF No. 9 ("Motion")].[1] United

States District Judge Kathleen M. Williams previously adopted the Undersigned's

Report and Recommendations and granted Plaintiff's request for a temporary

---

[1]      There were 95 Defendants total when Plaintiff attached its Schedule "A" list to its
Motion. [ECF No. 9, pp. 19–23]. The list includes each Defendant's name or e-commerce
store name, email addresses related to each Defendant's financial account, and means of
contact (*i.e.*, phone numbers and type of contact platform, such as WhatsApp). Plaintiff
has since filed a Notice of Voluntary Dismissal of Defendant Numbers 25 and 57 [ECF
No. 26]. Therefore, Plaintiff has removed these two Defendants from its Schedule "A".
There are now 93 Defendants.

restraining order and an order restraining Defendants' assets. [ECF No. 18]. The District Court referred the Motion and set the hearing on the Motion in front of the Undersigned, "[p]ursuant to 28 U.S.C. § 636, and the Magistrate Rules of the Local Rules for the Southern District of Florida[.]" [ECF No. 18]. The Undersigned held a Zoom hearing on Plaintiff's Motion for a preliminary injunction on December 16, 2024. [ECF No. 19]. Aside from myself and Court staff, only Plaintiff's counsel appeared.[2]

For the reasons set forth below, the Undersigned **respectfully recommends** that the Court **grant** this Motion in its entirety.

## I.      FACTUAL BACKGROUND

This is a trademark infringement case in which Plaintiff alleges that Defendants, through their individual online-based seller stores, are advertising, promoting, offering for sale, or selling goods using or bearing what Plaintiff has determined to be infringements of its registered trademarks ("Chanel Trademarks"). Plaintiff's Amended Complaint includes four counts: (1) Trademark Counterfeiting and Infringement Pursuant to § 32 of the Lanham Act (15 U.S.C. § 1114); (2) False Designation of Origin Pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); (3) Common Law Unfair Competition; and (4) Common Law Trademark Infringement. [ECF No. 25].

---

[2]      Stephanie McCarn served as the hearing's court reporter. If anyone needs to contact her to order a transcript of today's hearing, then she can be contacted by email at smccarn1@gmail.com or by telephone at (305) 523-5518.

Plaintiff is a corporation which operates boutiques internationally and is, in part, engaged in the business of manufacturing and distributing its luxury goods around the world. [ECF No. 25, ¶ 4].

Plaintiff registered various trademarks to protect its brand. *Id*. at ¶ 15.[3] The Chanel Trademarks "are used in connection with the manufacture and distribution of high-quality goods[.]" *Id*. Plaintiff discovered that Defendants "directly engage in unfair competition with Chanel by advertising, offering for sale, and selling goods each bearing and/or using counterfeits and infringements of one or more of Chanel's trademarks to consumers within the United States and the [D]istrict through Internet-based e-commerce stores[.]" *Id*. at ¶ 11.

As part of its investigation into Defendants, Plaintiff retained a licensed private investigative firm to investigate the suspected sales of counterfeit Chanel products by Defendants and to document the available payment account data related to the sale of those counterfeit goods. [ECF No. 9-1, ¶ 10]. The investigative firm accessed all of Defendants' e-commerce stores and placed an order for the purchase of a product violating Chanel's trademarks. *Id*. at ¶ 11. The firm documented its investigation and

---

[3] A copy of Plaintiff's Certificates of Registration for the Chanel Trademarks is attached to Plaintiff's Amended Complaint. [ECF No. 25-1].

provided its findings to Plaintiff. *Id*. Plaintiff inspected those findings[4] and concluded that Defendants were selling products that violate the Chanel trademarks. *Id*. at ¶ 12.

According to Plaintiff, Defendants' actions have irreparably damaged its goodwill and reputation. [ECF No. 9-1, ¶ 8]. Consequently, Plaintiff brought this action against Defendants [ECF No. 1] and thereafter filed this Motion. Plaintiff also filed declarations in support of its Motion from: (1) its Senior Counsel re: Anti-Counterfeiting, Elizabeth Han, (2) its legal counsel, Stephen Gaffigan, and (3) Eric Rosaler, an officer from the investigative firm hired. [ECF Nos. 9-1–9-3].

On November 7, 2024, Plaintiff filed its Complaint [ECF No. 1], and thereafter its Amended Complaint on December 12, 2024 [ECF No. 25] against Defendants alleging trademark counterfeiting and infringement (Count I), false designation of origin (Count II), common law unfair competition (Count III), and common law trademark infringement (Count IV). On November 8, 2024, Plaintiff filed an *ex parte* motion for entry of a temporary restraining order, preliminary injunction, and order restraining transfer of assets. [ECF No. 9]. The District Court referred these matters to the Undersigned. [ECF Nos. 12; 18].

On December 5, 2024, the Undersigned entered a report and recommendations recommending that the District Court grant Plaintiff's motion for a temporary

---

[4]      Plaintiff included these documented findings in its exhibits to this Motion. [ECF Nos. 9-4—9-9].

restraining order and for an order restraining Defendants' assets. [ECF No. 13]. On December 9, 2024, the District Court adopted the report and recommendations and granted Plaintiff's motion for a temporary restraining order and an order restraining Defendants' assets. [ECF No. 18]. The District Court also set a preliminary injunction hearing before the Undersigned for December 16, 2024. *Id.* at ¶ 12.

Pursuant to the District Court's December 9, 2024 Order [ECF No. 18], Plaintiff properly served Defendants with a copy of the Complaint [ECF No. 1], the *Ex Parte* Application for Entry of a Temporary Restraining Order [ECF No. 9], the Report and Recommendations [ECF No. 13], and the Court's December 9, 2024 Order by e-mail to each Defendant's e-mail account(s) and/or online contact form, and by posting copies of those same documents and materials on the website located at http://servingnotice.com/ca6Ah/index.html. Thereafter, Certificates of Service were filed confirming service on each Defendant. [ECF Nos. 23–24].[5]

On December 16, 2024, the Undersigned conducted a videoconference hearing on Plaintiff's Motion, at which only counsel for Plaintiff was in attendance. At the hearing,

---

[5]    In my Order granting Plaintiff's request for alternate service, I instructed Plaintiff to include translations of the relevant filings when serving Defendants. [ECF No. 14, p. 6]. At the hearing on Plaintiff's Motion, Plaintiff asked whether it could serve Defendants without the translations because it is not typically their practice in other federal court infringement actions and because these Defendants use English in their business transactions. The Undersigned confirmed and clarified that Plaintiff may satisfy the Rule 4 service requirement through the service and filing of English-language documents.

Plaintiff's counsel noted that no Defendant filed any Objections or any other submissions concerning the Temporary Restraining Order or the requested Preliminary Injunction. In addition, she advised that no Defendant (or attorney or agent for any Defendant) contacted their office, even informally, in connection with the TRO and requested Preliminary Injunction.

## II.     LEGAL STANDARD AND ANALYSIS

The standard for obtaining a temporary restraining order and a preliminary injunction are the same. *See Emerging Vision, Inc. v. Glachman*, No. 10-cv-80734, 2010 WL 3293346, at *3 (S.D. Fla. June 29, 2010) (citing *Siegel v. LePore*, 120 F. Supp. 2d 1041 (S.D. Fla.), *aff'd*, 234 F.3d 1163 (11th Cir. 2000)). In order to obtain a temporary restraining order or preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). A preliminary injunction may only issue after notice to the adverse party. Fed. R. Civ. P. 65(a).

The Lanham Act authorizes the Court to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and

Trademark Office[.]" 15 U.S.C. § 1116(a). Generally, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509–10 (S.D. Fla. 1995) (citation omitted).

*Elements for a Preliminary Injunction*

As noted above, Plaintiff's request must meet four elements: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. Rel Schindler*, 403 F.3d at 1225–26. Based on Plaintiff's Motion, its Amended Complaint, and the declarations submitted with the attached exhibits, Plaintiff has a strong probability of proving at trial that Defendants continuously infringed Plaintiff's intellectual property, and, that if equitable relief is not granted, then the continued infringement of those works will likely cause Plaintiff to suffer an immediate and irreparable injury.

The first element Plaintiff must demonstrate is whether it will have "a substantial likelihood of success on the merits." *Id*. at 1225. "[T]he elements of a claim for trademark infringement occur[ ] when a person 'use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark' which is likely to cause confusion, or to cause mistake, or to deceive.'" *Chanel, Inc. v. Reznik*, No. 07-60493-CIV,

7

2007 WL 9710719, at *2 (S.D. Fla. Nov. 21, 2007) (quoting *Frehling Enters. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999)). Thus, to prevail on Count I, Plaintiff must show "(1) that its mark has priority and (2) that [ ] [D]efendants' mark is likely to cause consumer confusion." *Id.*

Plaintiff has sufficiently alleged and established each of these elements: (1) Plaintiff's licensed exclusive rights to the Chanel Trademarks preceded Defendants' infringement; (2) Defendants are selling, offering for sale, and marketing products with the Chanel Trademarks without Plaintiff's consent or authorization; and (3) the marks used on the products Defendants are selling, offering for sale, and marketing are so similar to the Chanel Trademarks that they are likely to cause consumer confusion. [ECF Nos. 25, ¶¶ 15–39, 41–44; 9-1–9-9]. Based on its Motion, attached declarations, exhibits, and the Amended Complaint, the Undersigned finds that Plaintiff has established a *prima facie* case of trademark infringement[6] and consequently demonstrated a high likelihood of success on the merits.

---

[6]     "A movant need only demonstrate a substantial likelihood of success on one of its claims to obtain a preliminary injunction." *White Cap. L.P. v. Heyden Enters., LLC*, No. 23-14248-CIV, 2024 WL 3738925, at *3 (S.D. Fla. July 19, 2024), *report and recommendation adopted*, No. 23-14248-CIV, 2024 WL 3861528 (S.D. Fla. Aug. 19, 2024) (*citing Sapphire Consulting Servs. LLC v. Anderson*, 2021 WL 1053276, at *3 (M.D. Fla. Feb. 12, 2021) ("When a plaintiff asserts multiple claims as a basis for a preliminary injunction, the plaintiff 'need only establish a substantial likelihood of success on one claim.'" (citation omitted)).

"Defendants do not have, nor have they ever had, the right or authority to use the Chanel [Trademarks] for any purpose." [ECF No. 9, p. 3]. The screenshot attachments to Plaintiff's Motion, together with the declarations, show Defendants selling products (either through their e-commerce stores or direct messaging) that look **identical** to the Chanel Trademarks. [ECF Nos. 9-1–9-9].

The next element Plaintiff must demonstrate is that if its requested relief is not granted, then it will suffer irreparable injury. *Schiavo ex. Rel Schindler*, 403 F.3d at 1225–26. "In order for an injury to be irreparable, it cannot be undone through monetary remedies." *VAS Aero Servs., LLC v. Arroyo*, 860 F. Supp. 2d 1349, 1362 (S.D. Fla. 2012). Plaintiff has met this burden.

Plaintiff argues that Defendants actions damage its reputation and divert customers because of Defendants' control over online markets, Defendants' lower prices and inferior product quality. [ECF Nos. 9, p. 5; 9-1, ¶ 24]. "Each individual counterfeiter's actions, alone, cause Chanel irreparable harm. However, the sheer number of counterfeit e-commerce store operators act as a force multiplier of those individual harms and create a massive single reputation harm to Chanel." [ECF No. 9-1, ¶ 18]. "As a result of the availability of the non-genuine Chanel branded goods being offered for sale by Defendants, Chanel will experience irreparable injury and damage to its reputation among consumers unless the infringing and counterfeiting activity alleged in the Complaint is stopped." *Id.* at ¶ 25. The Undersigned agrees.

The third element requires that the movant prove that "the threatened injury outweighs the harm the preliminary injunction would cause the other litigant." *Head Kandy, LLC v. McNeill*, No. 23-CV-60345, 2023 WL 6309985, at *16 (S.D. Fla. Sept. 12, 2023), *report and recommendation adopted*, No. 23-CV-60345-RAR, 2023 WL 7318907 (S.D. Fla. Nov. 7, 2023) (quoting *Chavez v. Fla. SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014)). Thus, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

Based on Plaintiff's likelihood of success on its trademark infringement claim, the balance of harms weighs in favor of granting Plaintiff a preliminary injunction. Unless Defendants are enjoined and restrained, Plaintiff is likely to suffer further injuries that cannot be fully compensated or measured in money. The costs and hardship related to protecting Plaintiff's trademarks outweighs any potential damage to Defendants. A preliminary injunction would prevent Defendants from publicly using Plaintiff's trademarks without permission. **That is not a harm.** But, even if it were, this purported "harm" would not outweigh the jurisdiction behind issuing this preliminary injunction.

The final element is whether "the entry of relief would serve the public interest." *Schiavo ex. Rel Schindler*, 403 F.3d at 1226. Here, the imposition of a preliminary injunction would not disserve the public interest because "[t]he public interest **favors** issuance of the preliminary injunction to protect Plaintiff['s] trademark interests and

protect the public from being defrauded by the palming off of counterfeit products as Plaintiff['s] genuine goods." *Richemont Int'l v. Individuals*, No. 21-62503-CIV-WILLIAMS, 2022 U.S. Dist. LEXIS 33072, at *12 (S.D. Fla. Jan. 13, 2022) (emphasis added).

The Undersigned finds that Plaintiff has successfully met each of the necessary elements for a preliminary injunction.

*Request to Enjoin Transfer of Assets*

Plaintiff's Amended Complaint describes Defendants as:

7.      [I]ndividuals, business entities of unknown makeup, or unincorporated associations each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to consumers as well as shipping and fulfillment centers, warehouses, and/or storage facilities within the United States to redistribute their products from those locations.

8.      Defendants operate under the E-commerce Store Names in tandem with electronic communication via private messaging applications and/or services, thereby creating an interconnected ecosystem which functions as an online marketplace operation.

9.      Defendants use aliases in conjunction with the operation of their businesses, including but not limited to those identified by Defendant Number on Schedule "A."

[ECF No. 25, ¶¶ 7–9].

Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the

availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (citing *Fed. Trade Comm'n v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1433–34 (11th Cir. 1984)).

Under 15 U.S.C. § 1117(a), Plaintiff "may be entitled to recover, as an equitable remedy, the illegal profits gained through defendants' distribution and sales of goods bearing counterfeits and infringements of plaintiff's trademarks." *Max'is Creations, Inc. v. Individuals, P'ships, & Unincorporated Associations Identified on Schedule "A,"*, No. 21-CV-22920, 2021 WL 4307189, at *2 (S.D. Fla. Sept. 22, 2021); *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'" (alteration and omission in original) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962))). "In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark laws, Plaintiff[ ] has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained." *Burberry Ltd. v. Individuals Identified on Schedule "A,"*, No. 22-60687-CIV, 2022 WL 2805159, at *4 (S.D. Fla. May 19, 2022).

Therefore, the Undersigned **respectfully recommends** that the Court **grant** Plaintiff's request for an Order identifying Defendants' payment accounts and restraining the transfer of assets.

*Bond*

The Undersigned previously recommended [ECF No. 13] that Plaintiff be required to post a $10,000 bond in connection with the Temporary Restraining Order. The Court agreed [ECF No. 18], and Plaintiff did in fact post that bond [ECF No. 20]. The Undersigned respectfully recommends that the $10,000 bond previously posted also encompass the Preliminary Injunction.[7]

## III.    CONCLUSION

For the reasons outlined above, the Undersigned **respectfully recommends** that the Court **grant** Plaintiff's Motion for a Preliminary Injunction [ECF No. 9].

Plaintiff is instructed to provide a copy of this Report and Recommendations to Defendants, file Certificates of Service on CM/ECF once complete, and provide a proposed order adopting this Report and Recommendations to Judge Williams via email (in the Judge's e-file inbox) by the conclusion of the objections period below.

## IV.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of being served with a copy of this Report and

---

[7]      It is well-established that the amount of security required by [Rule 65(c)] is a matter within the discretion of the trial court, and the court may elect to require no security at all." *TracFone Wireless, Inc. v. Wash.*, 978 F. Supp. 2d 1225, 1235 (M.D. Fla. 2013) (quoting *BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005*)). See Chanel, Inc. v. bdlady.com*, No. 20-60568-CIV, 2020 WL 3266567, at *5 (S.D. Fla. Mar. 17, 2020) (requiring Plaintiff to post a $10,000.00 bond based on Plaintiff's evidence of trademark infringement).

Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, at Miami, Florida, on December 16, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Kathleen M. Williams
All Counsel of Record