# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO. 24-CV-24380-WILLIAMS/GOODMAN

CHANEL, INC.,

     Plaintiff,

v.

The Individuals, Business Entities, and
Unincorporated Associations Identified
on Schedule "A,"

     Defendants.

_____/

## REPORT AND RECOMMENDATIONS ON PLAINTIFF'S
## MOTION FOR FINAL DEFAULT JUDGMENT

In this trademark counterfeiting and infringement action, Plaintiff, Chanel, Inc.

("Chanel" or "Plaintiff") filed a motion for default judgment against Defendants, the

Individuals, Business Entities, and Unincorporated Associations (collectively,

"Defendants"). [ECF No. 44]. Defendants have not filed a response to Plaintiff's motion

(or otherwise participated in this lawsuit), and the response deadline has now expired.

United States District Judge Kathleen M. Williams referred this motion to the

Undersigned. [ECF No. 45]. For the reasons discussed below, the Undersigned

**respectfully recommends** that the District Court **grant** Plaintiff's Motion [ECF No. 44].

## I.      Background

Plaintiff filed a four-count Complaint and later filed an Amended Complaint alleging trademark counterfeiting and infringement pursuant to section 32 of the Lanham Act, 15 U.S.C. § 1114, (Count I); false designation of origin pursuant to section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), (Count II); common law unfair competition, (Count III); and common law trademark infringement, (Count IV). [ECF Nos. 1; 25]. Paragraph 15 of the Amended Complaint includes the image of each at-issue trademark (collectively, "Chanel Marks" or "Marks"), along with the corresponding registration number, registration date, and a list of products bearing the Marks. *Id*. at ¶ 15.

The Amended Complaint alleges that "Defendants are promoting, selling, offering for sale, and distributing goods bearing and/or using counterfeits and confusingly similar imitations of [the Chanel Marks] within this [D]istrict through various Internet based e-commerce stores operating under the seller names set forth on Schedule 'A' thereto (the 'E-commerce Store Names')." *Id*. at 1; *see also id*. at ¶¶ 24–28.

The Amended Complaint further alleges that:

> Chanel is suffering irreparable injury and has suffered substantial damages because of Defendants' unauthorized and wrongful use of the Chanel Marks. If Defendants' intentional counterfeiting and infringing and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Chanel and the consuming public will continue to be harmed while Defendants wrongfully earn a substantial profit.

*Id.* at ¶ 38.

Specifically, Plaintiff alleges that:

5.       Like many other famous trademark owners, Chanel suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Chanel's trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce stores.

6.       To combat the indivisible harm caused by the concurrent actions of Defendants and others engaging in similar conduct, each year Chanel expends significant monetary resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement, such as field training guides and seminars. The exponential growth of counterfeiting over the Internet, including through online marketplace and social media platforms, has created an environment that requires Chanel to expend significant resources across a wide spectrum of efforts to protect both consumers and it from confusion and the erosion of the goodwill embodied in Chanel's brand.

*Id.* at ¶¶ 5–6.

Plaintiff moved for and obtained an Order permitting it to effectuate service of process on Defendants through alternate means. [ECF Nos. 10; 14]. Thereafter, Plaintiff filed a proof of service indicating that it served Defendants with copies of the necessary filings, including the Complaint, the civil cover sheet, the Summonses, the Amended Complaint, the *Ex Parte* Motion for Order Authorizing Alternative Service of Process on Defendants, the Declaration of Stephen M. Gaffigan in Support of *Ex Parte* Motion for Order Authorizing Alternative Service of Process on Defendants, and the Order granting alternative service of process. [ECF Nos. 32; 32-1; 32-2].

Defendants failed to timely respond to the Amended Complaint. At Judge Williams' direction [ECF No. 40], the Clerk issued a Clerk's Default against Defendants. [ECF No. 42]. Plaintiff now seeks the entry of a default judgment in its favor and against Defendants, statutory damages, and the entry of a permanent injunction. [ECF No. 44].

## II.      Applicable Legal Standard

Federal Rule of Civil Procedure 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A party may then apply to the District Court for a default final judgment. Fed. R. Civ. P. 55(b)(2); *Alfa Corp. v. Alfa Mortg. Inc.*, 560 F. Supp. 2d 1166, 1173 (M.D. Ala. 2008).

A court may not enter a default final judgment based solely on the existence of a clerk's default. *Id.* at 1174. Instead, a court is required to examine the allegations to see if they are well-pleaded and present a sufficient basis to support a default judgment on the causes of action. *Id.* (citing *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).[1] Only those factual allegations that are well-pleaded are admitted in a default judgment. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

The decision whether to enter a default judgment "is committed to the discretion of the district court." *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1576 (11th Cir. 1985). Default

---

[1]      In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), our appellate court held that all Fifth Circuit decisions issued before the end of business on September 30, 1981 would become binding precedent in the Eleventh Circuit.

judgments are "generally disfavored" because this Circuit has a "strong policy of determining cases on their merits." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244–45 (11th Cir. 2015). In addition to assessing whether the complaint adequately sets forth facts to support the plaintiff's claims, a court considering the entry of a valid default judgment must "have subject-matter jurisdiction over the claims and have personal jurisdiction over the defendant." *Osborn v. Whites & Assocs. Inc.*, No. 1:20-cv-02528, 2021 WL 3493164, at *2 (N.D. Ga. May 20, 2021) (citing *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1215 & n.13 (11th Cir. 2009)).

A court may conduct a hearing on a motion for default judgment when, in order "to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2); s*ee also Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011) (noting that Rule 55(b)(2) "leaves the decision to hold an evidentiary hearing to the court's discretion").

## III.    Analysis

"[B]efore entering a default judgment, the Court must ensure that it has jurisdiction over the claims and there must be a sufficient basis in the pleadings for the judgment entered." *Tissone v. Osco Food Servs., LLC*, No. 19-CV-61358, 2021 WL 1529915, at *2 (S.D. Fla. Feb. 10, 2021), *report and recommendation adopted*, No. 19-61358-CIV, 2021 WL 870526 (S.D. Fla. Mar. 9, 2021) (citing *Nishimatsu*, 515 F.2d at 1206).

### a.    Subject Matter Jurisdiction

The Amended Complaint [ECF No. 25], alleges causes of action under the Lanham Act. Therefore, the Court has original subject-matter jurisdiction over the instant action. *See Ethos Grp., Inc. v. JAB Media, LLC*, No. 3:22-CV-485-TJC-LLL, 2023 WL 4187097, at *2 (M.D. Fla. May 25, 2023), *report and recommendation adopted*, No. 3:22-CV-485-TJC-LLL, 2023 WL 4181070 (M.D. Fla. June 26, 2023) ("Because this action arises under the Lanham Act, the Court has original subject-matter jurisdiction." (record citation omitted)). The Court also has supplemental jurisdiction over Plaintiff's common law claims because they "are so related to" Plaintiff's federal law claims "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Therefore, the Court has subject-matter jurisdiction over the instant action.

### b.    Personal Jurisdiction

In addition to subject-matter jurisdiction, a court must also have personal jurisdiction over a defendant. "A judgment rendered in the absence of personal jurisdiction is void and without legal effect." *Strange v. Nescio*, No. 20-80947-CV, 2021 WL 8945480, at *1 (S.D. Fla. Mar. 29, 2021) (citing *Juris v. Inamed Corp.*, 685 F.3d 1294, 1335 (11th Cir. 2012)). For this reason, "when deciding a motion for default judgment, a court has an affirmative duty to evaluate whether it has personal jurisdiction over the defendant and may raise the issue *sua sponte*." *Id.*

"The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process. Amenability to jurisdiction means that a defendant is within the substantive reach of a forum's jurisdiction under applicable law. Service of process is simply the physical means by which that jurisdiction is asserted." *Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 855 (11th Cir. 2010) (citation omitted).

### 1. Service of Process

Service of process is a jurisdictional requirement. "Generally, where service of process is insufficient, the court has no power to render judgment and the judgment is void." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003). "[W]ithout proper service of process, the district court ha[s] no power to enter a default judgment against the [defendant]." *Albert v. Discover Bank*, No. 21-12011, 2022 WL 1184405, at *1 (11th Cir. Apr. 21, 2022).

As noted above, Plaintiff filed a motion seeking authorization for service of process through alternate means, which the Court granted. [ECF Nos. 10; 14]. Plaintiff filed a proof of service indicating that Defendants were served via e-mail or e-commerce marketplace platform and via website posting with copies of the Complaint, the civil cover sheet, the Summonses, the Amended Complaint, the *Ex Parte* Motion for Order Authorizing Alternative Service of Process on Defendants, the Declaration of Stephen M. Gaffigan in Support of *Ex Parte* Motion for Order Authorizing Alternative Service of

Process on Defendants, and the Order granting alternative service of process. [ECF Nos. 32; 32-1; 32-2].

Because Plaintiff complied with the Court's Order [ECF No. 14] authorizing alternative service of process over Defendants, Plaintiff has effectuated service of process on Defendants in the instant case. *See Leading Edge Mktg. Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-23480-CIV, 2022 WL 16756952, at *2 (S.D. Fla. Nov. 7, 2022), *report and recommendation adopted*, No. 21-23480-CIV, 2022 WL 17144227 (S.D. Fla. Nov. 22, 2022) (finding defendants have been "properly served . . .with the [c]omplaint and summonses via email and Internet publication, consistent with the Court's [o]rder [a]uthorizing [a]lternate [s]ervice"); *Ain Jeem, Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 8:21-CV-1261-VMC-JSS, 2022 WL 2306858, at *2 (M.D. Fla. Jan. 27, 2022), *report and recommendation adopted sub nom. Ain Jeem, Inc. v. Individuals*, No. 8:21-CV-1261-VMC-JSS, 2022 WL 2306874 (M.D. Fla. Feb. 15, 2022) (finding that "[the] [p]laintiff [had] properly effected service on [the] [d]efendants pursuant to Federal Rule of Civil Procedure 4(f)(3)" by complying with the court's order authorizing alternate service of process).

### 2. Amenability to Jurisdiction

The Amended Complaint alleges that:

Defendants are individuals, business entities of unknown makeup, or unincorporated associations each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations to consumers as well as

shipping and fulfillment centers, warehouses, and/or storage facilities within the United States to redistribute their products from those locations.

[ECF No. 25, ¶ 7].

"The plaintiff has the burden of establishing a *prima facie case* of personal jurisdiction over a nonresident defendant." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268–69 (11th Cir. 2002). "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *see also Warner Bros. Ent. Inc. v. Phillips*, No. 6:14-CV-1294-ORL-37, 2015 WL 4590519, at *3 (M.D. Fla. July 28, 2015) ("Even in the default judgment context, as a threshold matter, the plaintiff bears the burden of pleading sufficient facts to make out a *prima facie* case of personal jurisdiction over non-resident defendants.").

In *Leading Edge Mktg., Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, this Court determined that it had "personal jurisdiction over the [d]efendants" because they had been served in accordance with the "Court's order authorizing alternative service" and:

> [the] [d]efendants directly target[ed] their business activities toward consumers in the United States, including Florida, and . . . [were] reaching out to do business with Florida residents by operating one or more commercial, interactive internet stores on internet marketplaces where Florida residents [could] purchase products bearing infringing and/or counterfeit trademarks belonging to the [p]laintiff.

No. 23-CV-21333, 2023 WL 3392684, at *2 (S.D. Fla. May 10, 2023).

Similarly here, the Amended Complaint alleges that:

2.      Defendants are subject to personal jurisdiction in this [D]istrict, because they **direct business activities towards and conduct business with consumers throughout the United States, including within the State of Florida and this [D]istrict** through, at least, the Internet based e-commerce stores accessible and doing business in Florida and operating under their E-commerce Store Names. . . .

***

28.      **Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this [D]istrict** and elsewhere throughout the United States. As a result, Defendants are defrauding Chanel and the consuming public for Defendants' own benefit.

[ECF No. 25, ¶¶ 2, 28 (emphasis added)].

Because "a defaulted defendant is deemed to have admitted the movant's well-pleaded allegations of fact,"[2] these established facts provide a basis for this Court's personal jurisdiction over Defendants. *See TWOWS, LLC v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 8:23-CV-00139-WFJ-MRM, 2023 WL 2837693, at *2 (M.D. Fla. Apr. 7, 2023) ("[The] [p]laintiff has demonstrated a *prima facie* showing that this Court has specific personal jurisdiction over the [d]efendants. [The] [d]efendants, alleged to be residing or operating in outside the United States, and are

---

[2]     *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1339 (11th Cir. 2014).

alleged to have committed a tortious act within the state of Florida in satisfaction of Fla. Stat. § 48.193(1)(b).").[3]

In sum, Plaintiff has demonstrated that this Court has both subject-matter and personal jurisdiction over Defendants.

**c.      Liability**

As noted above, the Amended Complaint alleges trademark counterfeiting and infringement (Count I) and false designation of origin (Count II), pursuant to sections 32 and 43 of the Lanham Act, respectively. [ECF No. 25]. It also alleges claims for common law unfair competition (Count III) and trademark infringement (Count IV). *Id.*

"[T]he elements of a claim for trademark infringement occur[ ] when a person 'use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark' which 'is likely to cause confusion, or to cause mistake, or to deceive.'" *Chanel, Inc. v. Reznik*, No. 07-60493-CIV, 2007 WL 9710719, at *2 (S.D. Fla. Nov. 21, 2007)

---

[3]      *See also, Lead Creation Inc. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 8:23-CV-49-CEH-CPT, 2023 WL 1993971, at *2 (M.D. Fla. Feb. 14, 2023) ("[The] [p]laintiff has demonstrated a *prima facie* showing that this Court has personal jurisdiction over the [d]efendants, who are alleged to be residing or operating in the People's Republic of China, because the [d]efendants directly target their business activities toward consumers in the United States, including Florida. Specifically, [the] [p]laintiff has provided a basis to conclude that [the] [d]efendants have targeted sales to Florida residents by setting up and operating e-commerce stores that target United States consumers using one or more [s]eller [a]liases, offer shipping to the United States, including Florida, accept payment in U.S. dollars and have sold the same product that infringes directly and/or indirectly [the] [p]laintiff's patent-in-suit to residents of Florida.").

(quoting *Frehling Enters. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999)). Thus, to prevail on Count I, Plaintiff must show "(1) that [the] mark has priority and (2) that [ ] [D]efendant[s'] mark is likely to cause consumer confusion." *Id.*

Plaintiff has sufficiently alleged and established each of these elements: (1) Plaintiff's ownership of the Chanel Marks preceded Defendants' infringement; (2) Defendants are selling, offering for sale, and marketing products with the Chanel Marks without Plaintiff's consent or authorization; and (3) the marks used on the products Defendants are selling, offering for sale, and marketing are similar to Plaintiff's Chanel Marks that they are likely to cause consumer confusion. [ECF No. 25, ¶¶ 15, 17, 24–30, 42, 43]. Accordingly, Plaintiff is entitled to a default judgment on its Lanham Act trademark counterfeiting and infringement claim (Count I).

"The elements of a claim for false designation of origin are: '(1) that the plaintiff had enforceable trademark rights in the mark or name[ ] and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two.'" *Volkswagen Grp. of Am., Inc. v. Varona*, No. 19-24838-CIV, 2021 WL 247872, at *11 (S.D. Fla. Jan. 25, 2021) (quoting *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1299 (S.D. Fla. 2017)).

The test for liability for false designation of origin is the same as for trademark infringement and counterfeiting, whether the public is likely to be deceived or confused by the similarity of the subject marks. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780

(1992). As already noted, Plaintiff's well-pled allegations establish its ownership of the Chanel Marks and there is a likelihood of consumer confusion due to Defendants' use of those Marks. [ECF No. 25, ¶¶ 7–12, 22–32, 37–41, 44–49, 52–54, and 57–60]. Thus, Plaintiff is entitled to a default judgment on its Lanham Act false designation of origin claim (Count II).

Plaintiff has also alleged common law causes of action for unfair competition (Count III) and trademark infringement (Count IV). "[T]he Florida common law trademark infringement and unfair competition analysis is essentially the same as the federal trademark infringement analysis." *Colonial Van Lines, Inc. v. Colonial Moving & Storage, LLC*, No. 20-CIV-61255-RAR, 2020 WL 6700449, at *2 (S.D. Fla. Oct. 20, 2020) (citing *Marine v. Black Fin Yacht Corp.*, No. 8:15-CV-1210-T-27AEP, 2016 WL 5106948, at *5 (M.D. Fla. Sept. 20, 2016)). Because Plaintiff has shown it is entitled to a default judgment in its favor on its federal trademark infringement claim, it is also entitled to a default judgment in its favor on its common law trademark infringement and unfair competition claims.

Here, the well-pled allegations in the Amended Complaint, deemed admitted by virtue of Defendants' default,[4] establish Defendants' liability for each of the claims asserted. Moreover, the Amended Complaint's factual allegations have been substantiated by the sworn declaration of Elizabeth Han, Plaintiff's Senior Counsel –

---

[4]      *Perez*, 774 F.3d at 1339.

Anti-counterfeiting. [ECF No. 44-2]. Therefore, Plaintiff has shown that Defendants are liable for trademark infringement and counterfeiting under section 32 of the Lanham Act, false designation of origin under section 43 of the Lanham Act, common law unfair competition, and common law trademark infringement.

### d.    Damages

"Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages." *Gov't Emps. Ins. Co. v. Compass Med. Ctrs Inc.*, No. 21-CV-23623, 2022 WL 17653816, at *2 (S.D. Fla. Nov. 10, 2022), *report and recommendation adopted*, No. 21-23623-CIV, 2022 WL 17602650 (S.D. Fla. Dec. 13, 2022). Even in the default judgment context, the Court "has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003).

"Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ. § 2688 at 58–59 (3d ed.1998)).

Here, Plaintiff seeks equitable relief and monetary (statutory) damages. As discussed below, Plaintiff is entitled to the relief requested.

### 1. Injunctive Relief

Plaintiff seeks the issuance of a permanent injunction. [ECF No. 44, pp. 10–15]. The Lanham Act authorizes the Court to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office[.]" 15 U.S.C. § 1116(a). Generally, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509–10 (S.D. Fla. 1995) (citation omitted). Moreover, injunctive relief is available even in the default judgment setting[ ] because [the] [d]efendants' failure to respond or otherwise appear makes it difficult for a plaintiff to prevent further infringement absent an injunction." *Animacord Ltd.*, 2022 WL 1109849, at *4 (internal citation omitted).

To obtain a permanent injunction, Plaintiff must show: (1) irreparable injury; (2) an inadequate remedy at law; (3) that the balance of hardships weigh in favor of issuing an injunction; and (4) the issuance of an injunction would not disserve the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006).

All four factors are met here. Plaintiff has shown that Defendants are "promoting and advertising, distributing, selling, and/or offering for sale goods" using Plaintiff's Chanel Marks "through at least the e-commerce stores under the E-commerce Store

Names." [ECF No. 25, ¶ 24]. Therefore, consumers will continue to be confused by Defendants' unauthorized use of Plaintiff's Marks.

Additionally, so long as Defendants continue their infringing and counterfeiting activities, Plaintiff loses its ability to control its Marks and will continue to suffer irreparable harm to its reputation and goodwill. *See Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & CO's business reputation and decrease its legitimate sales."); *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 190 (11th Cir. 2005) (noting that "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill. Irreparable injury can also be based upon the possibility of confusion." (citation omitted)).

Plaintiff has also shown no adequate remedy at law because monetary damages alone will not redress the harm to Plaintiff from Defendants' infringement. *See Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1290 (S.D. Fla. 2016) ("[The] [p]laintiff has no adequate remedy at law so long as [the] [d]efendants continue to operate the [s]ubject [d]omain [n]ames and [s]eller IDs because [the] [p]laintiff cannot control the quality of what appears to be its products in the marketplace. An award of money damages alone will not cure the injury to [the] [p]laintiff's reputation and goodwill that will result if [the] [d]efendants' infringing and counterfeiting actions are allowed to continue." (record citation omitted)).

16

The balance of harms also weighs in favor of issuing a permanent injunction. Plaintiff's injury without an injunction outweighs the impact an injunction would have on Defendants. *See Chanel, Inc. v. Replicachanelbag*, 362 F. Supp. 3d 1256, 1264 (S.D. Fla. 2019) (finding that the balance of harms favored the issuance of a permanent injunction where "[the] [p]laintiff face[d] hardship from loss of sales and its inability to control its reputation in the marketplace," whereas "[the] [d]efendants face[d] no hardship if they [were] prohibited from the infringement of [the] [p]laintiff's trademarks, which is an illegal act").

Lastly, the public interest will not be disserved if the Court were to enjoin Defendants. "[T]he public interest is served by preventing consumer confusion in the marketplace." *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001) (citing *SunAmerica Corp. v. Sun Life Assurance Co. of Canada*, 77 F.3d 1325, 1334 (11th Cir. 1996));[5] *Mantua Mfg. Co. v. Irize Mattress, Inc.*, No. 20-25036-CIV, 2021 WL 3375837, at *5 (S.D. Fla. Feb. 24, 2021) ("The public interest is served by the entry of a permanent injunction in that further confusion and mistake by the public will be prevented.").

In sum, Plaintiff has shown entitlement to permanent injunctive relief. Therefore, the Undersigned **respectfully recommends** that the District Court enter permanent

---

[5]     Although *Davidoff & CIE, S.A.* concerned the entry of a *preliminary* injunction and the instant motion seeks the issuance of a *permanent* injunction, "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987).

injunctive relief consistent with the terms listed in paragraphs 1(a)–(j) and 2(a)–(g) of Plaintiff's proposed final default judgment and permanent injunction. [ECF No. 44-5, pp. 1-4].

### 2. Monetary (Statutory) Damages

The Lanham Act provides multiple remedies for violations of trademark law. In addition to injunctive relief, discussed *supra*, the Lanham Act permits a successful plaintiff "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). The Lanham Act also allows for the court-ordered turnover of counterfeit items in a defendant's possession. 15 U.S.C. § 1118.

In certain instances, the Lanham Act provides for the recovery of statutory damages:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—
>
> (1)    **not less than $1,000 or more than $200,000 per counterfeit mark** per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2)    **if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark** per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c) (emphasis added).

"The Court has wide discretion to determine the amount of statutory damages." *Animacord Ltd. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-CV-20744, 2022 WL 1109849, at *5 (S.D. Fla. Mar. 24, 2022), *report and recommendation adopted sub nom. Animaccord Ltd. v. Individuals, P'ships, or Unincorporated Ass'ns Identified on Schedule A*, No. 21-20744-CIV, 2022 WL 1102865 (S.D. Fla. Apr. 13, 2022) (citing *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1219 (S.D. Fla. 2004)). The Court may award statutory damages even in instances where a plaintiff cannot prove actual damages caused by a defendant's infringement. *See ABS-CBN Corp. v. abscbn-teleserye.com*, No. 17-61051-CIV, 2017 WL 6947726, at *8 (S.D. Fla. Dec. 27, 2017) (noting that "[a]n award of statutory damages is appropriate, because statutory damages may be elected whether or not there is adequate evidence of the actual damages suffered by [the] plaintiff or of the profits reaped by the [d]efendant").

The amount of statutory damages awarded should be sufficient to compensate the trademark owner *and* deter the defendant and others from infringing on that trademark. *See Green Apple Juice Bar, LLC v. Bay Parc Plaza Mkt., LLC*, No. 22-23295-CIV, 2023 WL 3980245, at *7 (S.D. Fla. May 19, 2023), *report and recommendation adopted*, No. 22-23295-CV, 2023 WL 3971175 (S.D. Fla. June 13, 2023) ("Statutory damages should serve the dual purposes of compensating the plaintiff and sanctioning and deterring infringers." (citing *PetMed Express*, 336 F. Supp. 2d at 1220–21)).

Case 1:24-cv-24380-KMW   Document 46   Entered on FLSD Docket 03/18/2025   Page 20 of 22

Here, Plaintiff seeks enhanced statutory damages based on Defendants' willful conduct. [ECF No. 44, pp. 16–19]. It notes that "[t]he Chanel Marks are renowned worldwide as identifiers of high-quality merchandise, and the fact that Defendants offered for sale and sold goods using marks which are identical or altered to be identical to such strong marks shows its desire and purpose to trade upon Chanel's goodwill." *Id.* at 17.

The infringement in the instant case was willful:

> A defendant is deemed to have acted willfully where "the infringer acted with actual knowledge or reckless disregard" of a plaintiff's intellectual property rights. *Arista Records*, 298 F. Supp. 2d [1310,] 1312 (S.D. Fla. 2003). Willful infringement may be inferred where, as here, a defendant is willing to accept a default judgment. *See Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *7 (S.D. Fla., Oct. 18, 2007).

*Sanrio Co. v. Sommer's Ent. LLC*, No. 18-CV-22177, 2019 WL 2010249, at *5 (S.D. Fla. Mar. 21, 2019) (Williams, J.).

The Undersigned **respectfully recommends** that the District Court award Plaintiff the requested statutory damages amount of $100,000.00 against each Defendant. [ECF No. 44, p. 19].[6] This recommended statutory award will compensate Plaintiff, punish Defendants, and deter it and others from continuing to counterfeit or otherwise infringe

---

[6]     Plaintiff explains that "[a]lthough Chanel's evidence demonstrates that Defendants have counterfeited multiple trademarks, Chanel is requesting a statutory damages award in the amount of $100,000.00 against each Defendant based upon Defendant's use of at least one counterfeit mark on one type of good." [ECF No. 44-1, ¶ 5].

on Plaintiff's trademark, consistent with the purpose of 15 U.S.C. § 1117(c). *See Chanel,*

*Inc. v. Sea Hero*, 234 F. Supp. 3d 1255, 1263 (S.D. Fla. 2016) (awarding $100,000.00 in

statutory damages per defendant in willful infringement case).[7]

## IV.   Conclusion

For the reasons stated above, the Court should **grant** Plaintiff's motion [ECF No.

44], **award** it $100,000.00 in statutory damages (per Defendant), and **issue** a permanent

injunction against Defendants.

Plaintiff will provide a copy of this Report and Recommendations to Defendants

in the same manner in which the Court authorized alternate service of process on

Defendants. [ECF No. 14]. Plaintiff will file a notice of compliance on CM/ECF by no later

than **Tuesday, March 25, 2025**.

## V.   Objections

The parties will have three (3) days[8] from the date of being served with a copy of

this Report and Recommendations within which to file written objections, if any, with

Judge Williams. Each party may file a response to the other party's objection within

---

[7]     As noted above, Plaintiff's Amended Complaint alleges four causes of action.
Plaintiff's election of statutory damages is as to Count I. *Id*. at 20. Plaintiff further states
that the judgment on Counts II, III, and IV should be limited to the amount awarded
pursuant to Count I and entry of the requested equitable relief. *Id*.

[8]     The Undersigned is shortening the deadline because Defendants have not
participated in this action, and it seems unlikely that Plaintiff will object to the
recommended relief.

three (3) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

   **RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on March 18, 2025.

Jonathan Goodman
CHIEF UNITED STATES MAGISTRATE JUDGE

<u>**Copies furnished to**</u>:
The Honorable Kathleen M. Williams
All Counsel of Record

22